UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| RAYNEL JOHNSON o/b/o ) <br> BRANDON L. JOHNSON, ) <br> ) <br>      Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF ) <br> SOCIAL SECURITY, ) <br> ) <br>      Defendant. ) <br> _____) | Case No. 1:09-cv-967 <br><br> Honorable Paul L. Maloney <br><br> **REPORT AND RECOMMENDATION** |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to child's supplemental security income (SSI) benefits. On March 28, 2006, Raynel Johnson filed an application for SSI benefits on behalf of her then-minor son, Brandon L. Johnson, claiming an October 1, 2001 onset of disability.[1] (A.R. 108-111). Plaintiff's claim was denied on initial review. (A.R. 77-80). On September 12, 2008, plaintiff received a hearing before an administrative law judge (ALJ). (A.R. 26-75). On February 6, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 14-25). On August 21, 2009, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, April 2006 is plaintiff's earliest possible entitlement to SSI benefits.

On October 20, 2009, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claim for SSI benefits. The two issues raised by plaintiff are as follows:

1. The ALJ committed reversible error "by failing to allow Plaintiff to hire an attorney;" and

2. The ALJ committed reversible error when he found that plaintiff did not meet the requirements of listing 112.05.

(Statement of Errors, Plf. Brief at 9, docket # 11). Alternatively, plaintiff asks the court to remand this matter to the Commissioner for consideration of new evidence under sentence six of 42 U.S.C. § 405(g). Upon review, I recommend that plaintiff's request for remand be denied. I further recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any

fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

### Standard for Finding Disability on a Child's Claim for SSI Benefits

Under the Work Opportunity Act standard,[2] a child seeking SSI benefits can establish disability only by showing that he suffers from a medically determinable physical or mental impairment which results in marked and severe functional limitations and lasts for a period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). "The thrust of the legislation was most

---

[2] Personal Responsibility & Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, §§ 211-12, 100 Stat. 2105, 2188-94 (1996).

certainly to tighten eligibility." *Encarnacion ex rel. George v. Barnhardt*, 331 F.3d 78, 83 (2d Cir. 2003). Under the current three-step analysis, the Commissioner must ask: (1) is the claimant engaged in substantial gainful activity? (2) are the impairments severe? and (3) do the impairments meet, medically equal, or functionally equal in severity a listed impairment and satisfy the durational requirements? *See Elam ex rel. Golay v. Commissioner*, 348 F.3d at 125; 20 C.F.R. § 416.924(a). As a result of the Work Opportunity Act, a child claimant must meet or equal a listed impairment in order to qualify for SSI benefits.[3] *See* 20 C.F.R. § 416.924(d)(2); *see also Encarnacion*, 331 F.3d at 84; *Miller ex rel. Devine v. Commissioner*, 37 F. App'x 146, 148 (6th Cir. 2002).

By regulation, the ALJ utilizes six domains of functioning to assist in determining whether the combination of a minor's impairments equals the severity of a listed impairment: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the claimant's ability to care for himself; and (6) the claimant's health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Impairments must result in "marked" limitations in two domains or "extreme" limitations in one domain before they meet or equal a listed impairment's severity. 20 C.F.R. § 416.926a(d); *see Kelly v. Commissioner*, 314 F. App'x 827, 832 (6th Cir. 2009); *Encarnacion*, 331 F.3d at 85. A "marked" limitation

---

[3]"The standard rationale for this curious-seeming extension of the benefits program for disabled adults is . . . that having a disabled child may limit the amount of productive work that the parents can do, inflicting hardship on families of limited means. But since disabled children generally do not have a work history, the structure of the disability program for them necessarily differs from that for adults, except in cases in which the child has a 'listed impairment,' that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to work; the child is treated the same in such a case. Otherwise the question is whether the child is severely limited in functioning in specified areas of life activity such as concentration and communication, which correspond to activities that adults perform at work. Thus a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working." *Sanchez v. Barnhart*, 467 F.3d 1081, 1082 (7th Cir. 2006) (citations and internal quotations omitted).

"interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*; *see Kelly*, 314 F. App'x at 832. An "extreme" limitation is more than a "marked" limitation. An "extreme" limitation is the rating given to the "worst limitations." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id*. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*; *see Kelly*, 314 F. App'x at 832.

### Discussion

Plaintiff was born in February 1993 and is 18 years old. He was a school-age child on the date the application for SSI benefits was filed, and was an adolescent on the date of the ALJ's decision. (A.R. 17). Plaintiff has never engaged in substantial gainful activity. (A.R. 17). The ALJ found that plaintiff had the following severe impairments: "borderline intellectual functioning, attention deficit with hyperactivity disorder, and oppositional defiant disorder." (A.R. 17). Plaintiff did not have an impairment or combination of impairments which met the requirements of any listed impairment:

> The claimant's IQ scores are within the borderline range of intellectual functioning, but he does not have deficits in adaptive functioning according to the criteria set forth in the *Diagnostic and Statistical Manual of Mental Disorders*, fourth edition. The claimant is not dependent on others for his personal needs (grossly in excess of age appropriate dependence) and is able to follow directions.

> The claimant has been diagnosed with attention deficit with hyperactivity disorder but does not have marked inattention, marked impulsiveness or marked hyperactivity.
>
> The claimant has also been diagnosed with oppositional defiant disorder but does not have a personality disorder manifested by pervasive, inflexible and maladaptive personality traits; or deeply ingrained maladaptive patterns of behavior associated with one of the following: seclusiveness or autistic thinking; pathologically inappropriate suspiciousness or hostility; oddities of thought, perception, speech or behavior; persistent disturbance of mood or affect; pathological dependence, passivity or aggressiveness; intense and unstable interpersonal relationships and impulsive and exploitative behavior; or pathological perfectionism and inflexibility.
>
> The claimant does not have marked impairment in age-appropriate cognitive/communicative function; marked impairment in age-appropriate personal functioning; marked impairment in age-appropriate social functioning or marked difficulties in maintaining concentration, persistence or pace.

(A.R. 17-18). Plaintiff's impairments did not equal the requirements of any listed impairment, because he did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. The ALJ found that plaintiff had "no limitations" in three of the six domains: moving about and manipulating objects (A.R. 22-23), caring for himself (A.R. 23-24), and health and physical well-being (A.R. 24-25). He had "less than marked" limitations in three domains: acquiring and using information (A.R. 18-20), attending and completing tasks (A.R. 20-21), and interacting and relating with others (A.R. 21-22). The ALJ found that plaintiff was not disabled, because he did not have an impairment or combination of impairments which met or equaled the requirements of any listed impairment. (A.R. 25).

**1.**

Plaintiff advances arguments based on evidence that he never presented to the ALJ. (Plf. Brief at 1-2, 6, 10; Reply Brief at 3). This is patently improper. It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of remand to the Commissioner "pursuant to either Sentence Four or Sentence Six of 42 U.S.C. Section 405(g)." (Plf. Brief at 12). Plaintiff's reply brief concludes with an identical request. (Reply Brief at 4). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon ex rel. Hollon v. Commissioner*, 447 F.3d 477,

482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence he now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. The proffered evidence (A.R. 292-395) is not new because it was created before the ALJ's February 6, 2009 decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

Plaintiff has not shown good cause. The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed, much less carried. his burden.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276. The proffered evidence is cumulative. It documents that plaintiff struggles academically, but "can do very well when he wants to." (A.R. 329). The records include

statements that plaintiff needed to put more effort into his work and was frequently absent from school. (A.R. 313-23). On October 29, 2008, plaintiff was placed on long-term suspension for his involvement in plotting and pulling the fire alarm at Ottawa Hills High School. (A.R. 297-98). The records reveal no effort by plaintiff to complete the requirements for his reinstatement. The proffered evidence would not have reasonably persuaded the Commissioner to reach a different decision on the issue of whether plaintiff was disabled on or before February 6, 2009.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. I recommend that plaintiff's motion for a sentence six remand be denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

**2.**

Plaintiff's argument that the ALJ committed reversible error "by failing to allow Plaintiff to hire an attorney" is meritless. It is well established that there is no constitutional right to counsel at an administrative hearing on a claim for social security benefits. *See Goldburg v. Kelly*, 397 U.S. 254, 270-71 (1970); *Bagby v. Harris*, 650 F.2d 836, 839 (1981). Claimants may represent themselves or be represented by attorneys or non-attorneys. 20 C.F.R. § 416.1505; *see Kidd v. Commissioner*, 283 F. App'x 336, 345 (6th Cir. 2008); *Nichols v. Commissioner*, No. 1:09-cv-1091, 2010 WL 5178069, at * 6 (W.D. Mich. Nov. 18, 2010). A claimant's decision to proceed without an attorney is not a basis for overturning the Commissioner's decision. *See Wilson v. Commissioner*, 280 F. App'x 456, 459 (6th Cir. 2008).

The ALJ found that plaintiff chose to proceed without the assistance of an attorney. (A.R. 14). The Social Security Act states, "The findings of fact of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The ALJ's factual finding that plaintiff elected to proceed without an attorney is supported by substantial evidence.

On December 5, 2006, the Social Security Administration sent plaintiff a notice describing the administrative hearing process. The notice advised plaintiff of his right to representation and provided attorney contact sources. (A.R. 83-87). On August 19, 2008, plaintiff informed the Social Security Administration that he wished to proceed in this matter without an attorney:

> I have reviewed your notice advising me that I am entitled to be represented by an attorney or other individual of my choice at my Social Security Hearing. I have been advised that I may be represented without charge by Legal Aid if I qualify for free legal services.
>
> I understand that I may be represented by an attorney or other individual and that such representation may be of assistance to me in presenting my case. However, I wish to proceed with the hearing without an attorney or other representation.

(A.R. 103).

On August 20, 2008, the Administration sent plaintiff a notice that his administrative hearing was scheduled for September 12, 2008. (A.R. 88). The hearing notice stated: "If you want to have a representative, please get one right away. You should show this notice to anyone you may appoint. You or that person should also call this office to give us his or her name, address, and telephone number." (A.R. 89).

The ALJ began plaintiff's hearing by questioning his mother regarding whether plaintiff wished to proceed without being represented by an attorney. (A.R. 29-31). Ms. Johnson confirmed that she had advised the Social Security Administration that plaintiff wished to proceed without an attorney:

> Q    Okay, and so by your signature on that form, I take it you want to have the hearing today without an attorney?
>
> A    Yeah.

(A.R. 32).  The ALJ made pellucid that it was up to Ms. Johnson whether she wished to proceed on plaintiff's claim without an attorney.  (A.R. 32).  The ALJ explained to Ms. Johnson that claimants for child SSI benefits face a demanding evidentiary burden in proving disability and she could reasonably anticipate some difficulty locating an attorney to take this case.  (A.R. 33-34).  Ms. Johnson reiterated that plaintiff wished to proceed without an attorney:

> Q    -- since you signed this paper, what it does tell me is at least you thought about it, you signed the paper and you are here today.
>
> A    Yeah.
>
> Q    So with that being the case, do you want to go ahead with the hearing today?
>
> A    Yeah.[4]

(A.R. 33).  The ALJ had the opportunity to see the witness and evaluate her testimony.  His finding that plaintiff knowingly elected to proceed without an attorney is supported by substantial evidence.[5]

---

[4] Plaintiff's attorney argues that Ms. Johnson's testimony "raises the issue of whether she could truly comprehend and understand what she had signed." (Plf. Brief at 11). Counsel asks the court to remand this matter so that "she can be represented by her current counsel at a new hearing." (*Id.*; *see* Reply Brief at 3-4). There is no foundation for a remand order. The record does not establish that Ms. Johnson lacked competency to agree to proceed without an attorney. The arguments of counsel are not evidence. *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006). Plaintiff's attorney did not submit affidavits or other evidence indicating that Ms. Johnson was not competent, and even if he had done so, plaintiff would still face his statutory burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the proffered evidence was new, material, and that there was good cause for the failure to present it in the prior proceeding. *See Ferguson v. Commissioner*, 628 F.3d at 276.

[5] The absence of counsel is a reason to "scrutinize the record with care," but it is not an independent ground for overturning the Commissioner's decision. *Holden v. Califano*, 641 F. 2d 405, 408 (6th Cir. 1981). Careful scrutiny does not necessarily result in a reversal of the

**3.**

Plaintiff argues that the ALJ committed reversible error when he found that plaintiff did not meet the requirements of Listing 112.05. It is well established that a claimant must show that he satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

"The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations and citations omitted). "The structure of the mental disorders listing for children under the age of 18 parallels the structure of the mental disorders listings for adults, but is modified to reflect the presentation of mental disorders in children." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(A). "Listing 112.05 (Mental Retardation) contains six sets of criteria. If an impairment satisfies the diagnostic description in the introductory paragraph and any one of the six sets of criteria" the child's impairments meet the requirements of the listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(A). Listing 112.05 for mental retardation contains the following diagnostic description requirements:

---

Commissioner's decision. *Id.* at 408-09.

> 112.05 *Mental Retardation*: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.[6]

20 C.F.R. Pt. 404, Subpt. P, App. 1., § 112.05. The ALJ found that plaintiff did not meet the listing's foundational diagnostic description requirements of "significantly subaverage general intellectual functioning with deficits in adaptive functioning." (A.R. 17). Plaintiff testified that he was in ninth grade at Ottawa Hills High School and attending special education classes. (A.R. 28-29). It is well established that placement in a special classroom falls short of establishing significantly subaverage general intellectual functioning with deficits in adaptive functioning. *See Foster v. Halter*, 279 F.3d at 352; *McLeichy v. Commissioner*, No. 1:09-cv-857, 2010 WL 3852318, at * 2 (W.D. Mich. Sept. 29, 2010). The Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of significantly subaverage intellectual functioning." *Hayes v. Commissioner*, 357 F. App'x 672, 677 (6th Cir. 2009). Plaintiff was able to read newspaper articles about sports. (A.R. 37-38). He testified that he was able to write his name and address and complete writing assignments at school. (A.R. 41-42). He was able to make his bed, pick up his own clothes, and shower on a daily basis. (A.R. 46-47). A claimant capable of performing such activities does not suffer from adaptive deficits. *See Harris v. Commissioner*, 330 F. App'x 813, 815 (11th Cir. 2009). Plaintiff was not dependent on others for his personal needs grossly in excess of age appropriate dependence and was able to follow directions. (A.R. 17). The ALJ's finding that plaintiff did not satisfy the requirements of listing 112.05 is supported by more than substantial evidence.

---

[6] Plaintiff's brief mentions listing 112.05's part C and D severity requirements. (Plf. Brief at 9; Reply Brief at 1-2). It is not necessary to discuss parts C and D because plaintiff did not satisfy the listing's diagnostic description. *See Elam*, 348 F.3d at 125.

**4.**

Plaintiff offers the following one-paragraph argument expressing his disagreement with the ALJ's factual findings for the domains of acquiring and using information, attending and completing tasks, and interacting and relating to others:

> [A]cademic underachievement would certainly seem to be indicative of at least a marked impairment in Domains 1 (Acquiring and Using Information) and 2 (Attending and Completing Tasks). Since the nonexamining physician found that BLJ would have a marked impairment in Domain 3 (Interacting and Relating to Others)(280), and the ALJ clearly had more evidence (but chose not to follow it) that supported that score, then BLJ would have qualified for benefits under this alternative theory. That is especially true since the evidence in this case ends with BLJ's expulsion from school,[7] which certainly indicates that BLJ has a marked impairment in Domain 3. Either way, the ALJ's findings on this issue do not have the support of substantial evidence.

(Plf. Brief at 10).[8] Plaintiff's argument is not supported by any legal authority, and he makes no attempt to engage the ALJ's factual findings and the evidence supporting those findings. Perfunctory arguments are deemed waived. *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007); *see also Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008). Assuming the issues had not been waived, they do not provide grounds for disturbing the Commissioner's decision because the ALJ's findings with regard to all the challenged domains are supported by substantial evidence.

---

[7] The evidence of plaintiff's suspension from school and other evidence that was never presented to the ALJ cannot be considered in the process of determining whether the ALJ's factual findings are supported by substantial evidence for the reasons stated in section 1.

[8] Plaintiff does not challenge the ALJ's findings that he had no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being.

A.      Acquiring and Using Information

The domain of acquiring and using information considers how well the claimant is able to acquire information and how well he uses the information. 20 C.F.R. § 416.926a(g). The ALJ found that plaintiff had a less than marked[9] limitation in this domain:

> The undersigned finds that the claimant has less than marked limitations in acquiring and using information. Testing in May 2000 revealed verbal IQ of 77 (borderline), performance IQ of 82 (low average) and full scale IQ of 78 (borderline). Testing in 2001 revealed verbal IQ of 67 (extremely low), performance IQ of 69 (extremely low) and full scale IQ of 65 (extremely low). Testing in November 2004 revealed verbal IQ of 77 (borderline), nonverbal IQ of 60 (extremely low) and full scale IQ of 67 (extremely low). In 2006 the claimant was at the basic level in reading, but at the apprentice level in language arts, math, social studies and writing. In the spring of 2007 he was at the apprentice level in language arts, math, reading and writing. The claimant's final report card for seventh grade indicated passing grades in all classes (Exhibit l1E)[A.R. 206]. The claimant's mother stated on May 5, 2006 that the claimant was able to answer the phone and deliver a message, but could not read, write letters, or make change (Exhibit 4E)[A.R. 164-67]. The claimant's special education teacher reported on May 11, 2006 that the claimant attended special education classes for five hours a day, was in the sixth grade and had reading, math and written language skills at the third grade level. The claimant's teacher reported that the claimant had an obvious problem comprehending oral instructions, understanding school and content vocabulary, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, and applying problem solving skills. The claimant's teacher also reported that the claimant had a serious problem reading and comprehending written material, comprehending and doing math problems, and recalling and applying previously learned material (Exhibit 3E)[A.R. 154-61].
>
> At the request of Social Security Administration, the claimant saw Dr. Wayne Kinzie, psychologist, on July 26, 2006. The claimant's mother stated that the claimant had a learning disorder, and could not read or write. The claimant did not put forth his best effort into the mental status examination or the testing, thus, Dr. Kinzie was unable to accurately measure the claimant's intellectual functioning. The test results revealed severe limitations in all areas of measurement, i.e. verbal IQ of 47, perceptual reasoning of 45, working memory of 50, visual processing of 53, and full scale IQ of 40. Dr. Kinzie reported that the claimant presented as an individual who had significant behavior problems, wanted to draw attention

---

[9]A "marked" limitation is a degree of limitation that is more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *see Sullenger v. Commissioner*, 255 F. App'x 988, 993 (6th Cir. 2007).

to himself, and avoided participating in tasks that he did not want to perform by exhibiting oppositional and odd behavior. Dr. Kinzie listed the claimant's diagnosis as oppositional defiant disorder and mental retardation; and gave him a Global Assessment of Functioning score of 55, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. Dr. Kinzie reported that the claimant may well have significant learning limitations however his behavior interfered with a valid and accurate indicator of his current intellectual functioning (Exhibit 6F)[A.R. 269-75]. On August 20, 2008, Dr. Lennox Forrest, psychologist, reported that he had been seeing the claimant for seven months for behavior problems. Dr. Forrest reported that the claimant attended special education classes, struggled to work independently, required constant supervision, struggled with his listening skills, and had a tendency to make poor decisions (Exhibit 11E)[A.R. 203-04].

An individual's IQ is inherent, usually set by age 18, and should remain relatively constant over time in the absence of brain damage due to trauma, drug abuse or organic disease process. In the absence of any significant practice effect (taking the test again within a short period of time), the higher IQ scores are given greater weight because individuals can feign less intelligence than they actually possess, but not more.

At the hearing, the claimant testified that he was in the ninth grade and attended special education classes. The claimant's mother testified that she also was in special education classes when in school and had difficulty reading and comprehending written material. The claimant testified that he was able to write out his name and address and fill out papers from school.

(A.R. 19-20). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston*, 245 F.3d at 534; *see Caudill v. Commissioner*, 424 F. App'x 510, 515 (6th Cir. 2011). The evidence cited in the above-quoted portion of the ALJ's opinion is substantial evidence supporting his factual finding that plaintiff had a "less than marked" limitation in acquiring and using information.

     B.    <u>Attending and Completing Tasks</u>

The domain of attending and completing tasks considers how well the claimant is able to focus and maintain attention, and how well he begins, carries through, and finishes activities, including the pace at which he performs activities and the ease with which he changes them. 20

C.F.R. § 416.926(h). The ALJ found that plaintiff had a less than marked limitation in this domain:

> <u>The undersigned finds that the claimant has less than marked limitations in attending and completing tasks.</u> In May of 2006, the claimant's mother stated that the claimant did not pay attention in school, and did his chores only after repeated instructions and reminders (Exhibit 4E)[A.R. 164-67]. On May 11, 2006, the claimant's special education teacher reported that the claimant had a slight problem sustaining attention during play/sports, waiting to take turns, organizing his materials, and working at a reasonable pace. The claimant's teacher reported that the claimant had an obvious problem refocusing to task when necessary, carrying out single or multi step instructions, and completing work accurately without careless mistakes. The claimant's teacher also reported that the claimant had a serious problem paying attention when spoken to directly, focusing long enough to finish tasks/activities, changing from one activity to another without being disruptive, completing assignments, and working without distracting others (Exhibit 3E)[A.R. 154-61]. Classroom observation in March of 2007 revealed that the claimant worked undisturbed/not distracted for 25 minutes (Exhibit l1E)[A.R. 206]. On September 15, 2008, Dr. Forrest reported that he started his professional relationship with the claimant on December 26, 2007 for impulsive and acting out behaviors both in school and in the community. Dr. Forrest listed the claimant's diagnosis as attention deficit with hyperactivity disorder with a Global Assessment of Functioning of 58, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (Exhibit 11F)[A.R. 287].
>
> There was no testimony regarding hyperactivity, inattention or impulsiveness.

(A.R. 21). The evidence listed by the ALJ is substantial evidence supporting his factual finding that plaintiff had a less than marked limitation in attending and completing tasks.

  C. <u>Interacting and Relating with Others</u>

This domain considers how well the claimant is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). The ALJ found that plaintiff had a less than marked limitation in this domain:

> <u>The undersigned finds that the claimant has less than marked limitations in interacting and relating with others.</u> The claimant's mother stated in May of 2006 that the claimant had many playmates, did not follow instruction or accept discipline from adults, and did not get along with his five siblings (Exhibit 4E)[A.R. 164]. In May of 2006 the claimant's special

education teacher reported that the claimant had a slight problem making/keeping friends, expressing anger appropriately, asking permission appropriately, relating experiences, using language appropriate to situation and listener, and using adequate vocabulary and grammar to express thoughts/ideas in everyday conversation. The claimant's teacher reported that the claimant had an obvious problem playing cooperatively with other children; and a serious problem seeking attention appropriately, following rules, and respecting/obey adults (Exhibit 3E)[A.R. 157]. Dr. Kinzie reported in July of 2006 that the claimant had some significant behavior problems, wanted to draw attention to himself, and avoided performing tasks that he did not want to perform by exhibiting oppositional and odd behavior. The claimant's mother stated that the claimant had a few friends, but usually stayed to himself, and got along "okay" with his siblings (Exhibit 6F)[A.R. 269-72]. On August 20, 2008, Dr. Forrest reported that the claimant was often rude and disrespectful, had difficulty getting along with his teachers and other authority figures, was able to get along with his peers, and was impulsive (Exhibit l1E)[A.R. 203].

At the hearing, the claimant stated that he did not have any friends that visited him. His mother testified that the claimant spent time with his cousin, and got along fairly well with his siblings. The claimant's mother also testified that the claimant sometimes mouthed off in school.

(A.R. 22). The above-cited evidence is substantial evidence supporting the ALJ's finding that plaintiff had a less than marked limitation in the domain of interacting and relating with others.

I find no basis for disturbing the Commissioner's decision, because the ALJ's factual findings that plaintiff had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others are supported by substantial evidence.

**5.**

Plaintiff argues in his reply brief that the ALJ committed error by not ordering additional IQ tests. (Reply Brief at 2-3). Raising a new argument in his reply brief is improper, and constitutes a violation of the court's Order Directing the Filing of Briefs. (docket # 10). It is well established that a reply brief is not the proper place to raise new arguments. *See e.g.*, *Sanborn v.*

*Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). A reply brief is the plaintiff's opportunity to respond to arguments raised for the first time in the defendant's brief. A plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments. I find that plaintiff's argument that the ALJ erred by not ordering additional IQ tests has been waived.

Even assuming that the issue had not been waived, I find no basis for disturbing the Commissioner's decision. "An ALJ has discretion to determine whether further evidence, such as additional testing, is necessary." *Hayes v. Commissioner*, 357 F. App'x at 675; *see* 20 C.F.R. § 416.917; *see also Foster v. Halter*, 279 F.3d at 355-56. The Sixth Circuit reviews an ALJ's decision whether to order additional testing under an abuse-of-discretion standard. *Hayes*, 357 F. App'x at 675; *Foster*, 279 F.3d at 356. Here, the Administration arranged for a consultative examination by Psychologist Kinzie, but plaintiff deliberately thwarted the effort to obtain valid test results. (A.R. 269-75). For example, Psychologist Kinzie found that plaintiff's response to the question of what he would do if there was a fire in a theater ("pour popcorn on it") "would be typical of individuals who would purposefully provide inappropriate responses." (A.R. 274). The ALJ was not required to waste additional time and public resources on a second consultative examination on the mere possibility that plaintiff might not make a second attempt to skew test results. I find no abuse of discretion.

**Recommended Disposition**

For the reasons set forth herein, I recommend that plaintiff's request to remand this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) be denied. I further recommend that the Commissioner's decision be affirmed.


Dated:   September 22, 2011         /s/  Joseph G. Scoville
                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).